UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAGHAM ABBAWI,                Case No. 22-13008
            Plaintiffs,

v.                        Denise Page Hood
                        United States District Judge

HENRY FORD HEALTH
SYSTEMS,
                        Curtis Ivy, Jr.
            Defendants.    United States Magistrate Judge
_____/

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL (ECF No. 42)
AND LIFTING THE STAY ON DISCOVERY DEADLINES (ECF No. 45)**

# I.    PROCEDURAL HISTORY

Plaintiff Nagham Abbawi filed this employment discrimination action on December 12, 2022.[1]  (ECF No.1).  In the complaint, Plaintiff alleges two claims of religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*, as well as a violation of Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws Ann. § 37.2202(1)(A) (West, Westlaw through P.A. 2024, No. 166, of 2024 Reg. Sess., 102d Leg.).  (*Id.* at PageID.1, 29).  On November 10, 2023, Plaintiff filed a motion to compel discovery that included, in part, a demand that Defendant, Henry Ford Health Systems, provide a full response to Request for Production ("RFP") No. 8.  (ECF No. 21).  Using various search

_____

[1] Plaintiff also goes by the name "Megan."  (*See* ECF No. 44, PageID.765 n.6).

terms, RFP No. 8 sought documents and electronically stored information ("ESI") that Plaintiff said was integrally related to her claims.  (ECF No. 21-3, PageID.298).

The Court denied Plaintiff's motion in relation to RFP No. 8 on March 6, 2024, because the request was overbroad under Federal Rule of Civil Procedure 26(b)(1).  (ECF No. 26, PageID.458-59).  In doing so, the Court instructed the parties to meet and confer on search terms so to bring them within the scope of discovery.  (*Id.* at PageID.459 ("Plaintiff should strongly consider limiting the request in scope as to time and perhaps persons whose email accounts would be searched.")).

Nearly six months later, on September 5, 2024, Plaintiff returned to this Court, moving once more to compel discovery of the now-revised RFP. No 8. (ECF No. 26).  Defendant responded that the revised RFP No. 8 remains overbroad and is disproportionate to the scope of discovery.  (ECF No. 43).  Upon filing its reply on September 26, 2024, Plaintiff completed briefing on this matter.  (ECF No. 44).

The District Judge referred all non-dispositive pretrial proceedings to the undersigned.  (ECF No. 23).  For the following reasons, the Court **ORDERS** Defendant to produce the requested ESI sought by RFP No. 8.  And the Court

**ORDERS** Defendant to reimburse Plaintiff half of the attorneys' fees and costs associated with bringing this motion.

## II.    BACKGROUND

Stated succinctly, Plaintiff alleged religious discrimination under federal and state law in relation to the termination of her employment following her purportedly religious-based objection and refusal to receive the COVID-19 vaccine.  (ECF No. 1, PageID.1-11).  Specifically, the allegations of unlawful conduct arose from Defendant's denial of her request for a religious exemption from the vaccination policy.[2]  (*Id.* at 11-15).  In prosecuting her claims though RFP No. 8, Plaintiff requested documents from Defendant related to

> [Defendant's] plans to respond to employee requests for accommodations (of any kind) from the [vaccine] Policy, whether it be conversations by executive leadership, emails or electronic messaging (including text messages and encrypted messaging apps) containing [certain terms] . . . between Henry Ford employees (including senior leadership), or any other communications channels used by Henry Ford.

(ECF No. 21-3, PageID.240).  This initial RFP No. 8 contained twenty search terms, did not specify any custodians, and lacked any temporal limitation.  (*Id.*).

Plaintiff returned to the drawing board after the Court denied her motion to compel in relation to RFP No. 8.  On March 8, 2024, Plaintiff shared revised search

---

[2] As explained in its March 2024 Order, the Court will continue to refer to Plaintiff's request as a religious exemption request.  (*See* ECF No. 26, PageID.445 n.1).

parameters with Defendant.  (*See* ECF No. 43-3, PageID.740; ECF No. 43, PageID.708).  The revisions limited the temporal scope to the period from January 1, 2020 until October 21, 2021 (the date of Plaintiff's termination), refined the search to nine custodians, and modified the search terms to include nineteen terms which varied from single words to more complex search strings.  (*See* ECF No. 43-3, PageID.740; ECF No. 40, PageID.708).  The resulting search produced "48,794 items and 100.46 GB of data."  (ECF No. 40, PageID.708).

Plaintiff offered to keep refining the search parameters by limiting the timeframe for the search to May 1, 2021 to November 1, 2021—a six-month window, down from the initially proposed twenty-two month period.  (*See id.*; ECF No. 43-4, PageID.744).  After contracting with an ESI vendor, the newly-revised proposed search yielded 63,548 hits for just three of the nine custodians.  (*See* ECF No. 43, PageID.709).  Such results exceeded Defendant's expectations by a factor of seven, consequently prompting reconsideration of the ESI search parameters. (*See id.* at PageID.709).

As the number of hits mounted, so too did Plaintiff's frustration.  On July 12, 2024, the Defendant informed Plaintiff that "the cost solely related to the vendor was approximately $12,000—[a] figure [that] did not account for the time and expense required for defense counsel to review, process for relevance and privilege, and produce responsive documents."  (*Id.* at PageID.710).  Defendant

proposed a cost-sharing arrangement, but Plaintiff apparently refused to do so "unless ordered by the Court." (*Id.*).

On August 1, 2024, Plaintiff's counsel offered revised search terms for a third time. This revision retained the May 2021 to November 2021 timeframe, reduced the number of custodians to eight, and further modified the search terms. (*Id.* at PageID.72; ECF 43-7, PageID.753-54). The search terms now consisted of two search strings which were limited themselves to three names—Plaintiff and two similarly situated employees (e.g., comparators) who had requested religious accommodations that Defendant approved. (*See* ECD No. 43-7, PageID.753). Plaintiff also included twenty-eight search terms alongside the second search string. (*Id.* at PageID.753-54).[3] In fact, this third-revised set of search parameters is what Plaintiff now demands in her motion to compel.[4] (*See* ECF No. 42, PageID.603).

According to Defendant, the other revisions did not lessen its supposed burden in producing the ESI. (*See* ECF No. 43, PageID.713). The newest proposed search "yielded more than 8,500 items and over 93 GB of data." (*Id.*).

_____

[3] Although there are a total of twenty-nine search terms, the term "pray! OR" is repeated twice.

[4] Plaintiff's counsel corrected an omission from its proposed search parameters in an email on August 7, 2024; this correction brings the search terms from August 1, 2024 in line with what Plaintiff requests in her motion. (*See* ECF No. 42-4, PageID.651 (adding "OR" to "harm!")).

After almost six-months of unproductive back-and-forth conversations related to the ESI discovery, "Defendant recommended Plaintiff file her motion [to compel] so the parties could brief the issues and the Court could issue a decision." (*Id.*).

## III.   ANALYSIS

### A.   Governing Standards

Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26. Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Fed. R. Civ. P. 37.

B.    Discussion

The disposition of this motion involves three issues.  The first two relate to the scope of discovery and depend on whether Plaintiff's ESI search parameters are overbroad and disproportionate.  The last issue involves whether this Court should order Defendant to pay for the costs and fees for this motion should the Court rule in Plaintiff's favor.  The Court will assess each issue in kind.

But first, the Court addresses a preliminary matter.  Plaintiff's motion argues that the requested ESI is discoverable—meaning relevant and proportional—to her federal claims.  (*See* ECF No. 42, PageID.616).  Specifically, Plaintiff alleges religious discrimination under Title VII of the Civil Rights Act of 1964 on both disparate treatment and failure to accommodate theories.  (*See id.* at PageID.614-615.  *See also* ECF No. 26, PageID.448-450).  The Court, however, need only determine whether the requested ESI is discoverable with respect to one of Plaintiff's federal claims.  Since the ESI is the same for both claims, compelled discovery on one claim consequently makes the information available for use in relation to the second claim.  Because the Court finds that the requested ESI is discoverable in relation to Plaintiff's disparate treatment theory, the Court does not analyze the arguments made in relation to the failure to accommodate theory.[5]

---

[5] Because the Court does not reach the failure to accommodate arguments, the Court need not now resolve the dispute about the undue burden/hardship defense that permeates the briefing. (*See* ECF No. 42, PageID.607; ECF No. 43, PageID.716; ECF No. 44, PageID.765, nn.4-5).  The

1.  <u>Relevance</u>

When assessing discovery disputes involving relevance, the trial court has "broad discretion to determine the boundaries of the inquiry." *Lillard v. Univ. of Louisville*, No. 3:11-CV-JGH, 2014 WL 12725816, at *5 (W.D. Ky. Apr. 7, 2014) (citing *Chrysler v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). In disparate treatment employment cases, such as this, courts broadly construe relevance considering plaintiff must often rely on circumstantial evidence to show discriminatory intent. 8 Fed. Prac. & Proc. § 2009.2 (3d ed.). Accordingly, "information concerning an employer's general employment practices is relevant even to a Title VII individual disparate treatment claim." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). The movant bears the burden in showing that the relevancy of the requested information is facially apparent. *See Lilliard*, 2014 WL 12725816, at *6. Though the bar for doing so is "extremely low." *In re Ford Motor Co. Spark Plug & 3-Valve Engine Prod. Liab. Litig.*, 98 F. Supp. 3d 919, 925 (N.D. Ohio) (referencing Fed. R. Evid. 401 when defining relevant

---

burden to establish the undue hardship defense falls on the employer. *See Stanley v. ExpressJet Airline, Inc.*, 356 F. Supp. 3d 667, 679-80 (E.D. Mich. 2018) (citing *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015)). Defendant indicates in its Answer that it "reserves the right to assert additional affirmative or other defenses as they become known . . . ." ECF No. 7, PageID.134. If Defendant indeed has not asserted the undue burden/hardship defense, the Court reminds it that "the ability to later add defenses through amendment of a pleading is governed by [Federal Rule of Civil Procedure] 15, not by a reservation of rights." *Hughes v. Flintco, LLC*, No. 18-CV-225-GFK-FHM, 2019 WL 13301603, at *3 (N.D. Okla. Jan. 25, 2019) (internal quotation and citation omitted).

evidence as having any tendency to make a fact more or less probable).  Once the

movant establishes relevance, the opposing party must assert "sufficient reasons"

for denying production of the sought after evidence.  *See Lillard*, 2014 WL

12725816, at *6.  *See also Webasto Thermo & Comfort North America, Inc. v.

*BesTop, Inc.*, 326 F.R.D. 465, 468 (E.D. Mich. 2018) ("Unless it is obvious from

the wording of the request itself that it is overbroad, vague, ambiguous, or unduly

burdensome, an objection simply stating so is not sufficiently specific.") (internal

quotations and citations omitted).

Through revised RFP No. 8, Plaintiff seeks "[a]ll documents including

emails or other electronic messaging (including emails and encrypted messaging

apps) relating to discussions of Henry Ford's plans to respond to employee

requests for accommodations (of any kind) from the [vaccine] Policy . . . ."  (ECF

No. 42, PageID.603).  Apart from the specific search terms,[6] the request is tailored

to those custodians that comprised the Religious Accommodation Committee—the

group that denied Plaintiff's exemption request.  (*Id.*).  The discovery also spans

the time from May 1, 2021 to November 1, 2021.  (*Id.*).

Plaintiff argues that the requested ESI is relevant to her disparate treatment

claim.  To state such a claim:

> [A] plaintiff must either present direct evidence of discrimination or,
> in the absence of direct evidence, present a prima facie case of

---

[6] For the individual search terms, see Appendix A.

indirect discrimination by showing (1) that he was a member of a
protected class, (2) that he experienced an adverse employment
action, (3) that he was qualified for the position, and (4) that he was
replaced by a person outside of the protected class or that he was
treated differently than similarly situated employees.

*Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).  Avoiding any reliance on
direct evidence, Plaintiff's argument only concerns the four-part test for prima
facie cases.  (*See* ECF No. 42, PageID.614 (citing Tepper)).  Upon making such a
showing, "the burden shifts to the defendant to articulate a legitimate,
nondiscriminatory reason for the adverse employment action."  *Id.* (citing
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Should the
defendant meet this burden, the plaintiff must then show that the proffered reason
is a pretext for discrimination.  *Id.* at 515-16 (citing *McDonell Douglas*, 411 U.S.
at 804).

While Plaintiff offers several reasons why the electronic information she
seeks is relevant to her disparate treatment theory, the central focus of her
argument is that it is needed to establish the fourth *Tepper* prong regarding
similarly situated employees, or comparators.[7]  (*See* ECF No. 42, PageID.617).
Defendant has identified one comparator and concedes in its response brief that

---

[7] Plaintiff offers additional reasons related to her disparate treatment theory.  Under the
"Argument" heading, Plaintiff explains that the ESI is relevant because it will help establish her
sincere religious beliefs (which relates to the first *Tepper* prong), show whether Defendant can
satisfy its burden under the *McDonnell Douglas* burden-shifting framework, and help Plaintiff in
showing pretext.  (*See* ECF No. 42, PageID.616).  The briefing itself, however, focuses solely on
comparators.  (*See id.* at PageID.617-19).  Accordingly, Court proceeds in the same manner.

there is one other similarly situated employee.  (*See id.* at 618-19; ECF No. 43, PageID.716 (referencing "an additional employee who conferred with Plaintiff about her religious accommodation request prior to its submission and had her religious accommodation request granted") (internal quotation and citation omitted)).  As for  the first of these comparators who had her accommodation request granted, Plaintiff points out that the only meaningful difference between their requests is their religion.  (*See* ECF No. 42, PageID.618-19).  Defendant does not contest this characterization.

The custodians' deliberations on the exemption requests from Plaintiff and her comparators are relevant to her disparate treatment claim.  Identifying the two theories for religious discrimination claims under Title VII, the Supreme Court stated that the "disparate-treatment provision prohibits actions taken with the *motive* of avoiding the need for accommodating . . . religio[n]."  *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) (emphasis in original).  In a discovery dispute in a separate employment discrimination case, this Court opined that "[w]hen the motive or intent of a defendant employer is at issue, information concerning its conduct towards employees other than the plaintiff is relevant."  *See E.E.O.C. v. Chrysler LLC*, No. 07-CV-12986, 2008 WL 2622948, at *4 (E.D. Mich. July 2, 2008) (quoting *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 653 (D. Kan. 2004)).  Thus, when asserting a disparate treatment-based

discrimination claim, one must make a showing as to the defendant employer's discriminatory motive; because circumstantial evidence will bear the load in making that showing, evidence related to other similarly situated employees is relevant. For when religion is the only basis for the treatment of materially identical employees, "an inference arises that [religion] was the reason for the disparate treatment." *Jamoua v. Mich. Farm Bureau*, No. 20-cv-10206, 2021 WL 5177472, at *16 (E.D. Mich. Nov. 8, 2021).

On their face, the search terms at issue are directly related to making such a showing. The terms are tied to search strings consisting of Plaintiff's name as well as the names of her comparators. Additionally, not only are the parameters limited temporally and specific to the custodians who made the decision on Plaintiff's exemption request (and all other such requests), but the terms themselves are also tailored to produce material indicative of discriminatory intent.

Without going through each term, consider just a handful of them. Some terms relate directly to the COVID vaccine ("vaccin!"; "vax!"; "shot!"; "covid!"), religious faith ("christ!"; "templ!" which targets terms such as "temple" and variations thereof; "faith!"; "pray!"; "relig!"; "sincer!" which targets terms such as "sincerity" and variations thereof; "holy!"; "spirit!"), and the exemption request review process itself ("reject!"; "den!" which targets terms such as "denial" and variations thereof; "grant!"; "accept!"; "accommodate!"). Only the term "saf!" is

12

not immediately recognizable; but upon a closer examination, "saf!" targets words like "safety" or "safely."  This makes sense as Plaintiff seeks information related to accommodations not afforded to her, but to her comparators that allowed themselves and others to work "safely" without receiving the COVID vaccine.

In all, the search terms are relevant because they pursue information on the custodians' deliberations on the exemption request from Plaintiff and the requests of her comparators.  For comparative purposes, the search parameters target only that information which can explain why the comparators received accommodations and the Plaintiff did not.  Accordingly, this information has at least some tendency to prove the fourth *Tepper* prong of Plaintiff's disparate treatment theory.  Considering the low bar for establishing relevancy and the general breadth granted to relevance issues in employment discrimination cases, Plaintiff easily satisfies her burden with respect to the requested ESI.

The same cannot be said of the Defendant's arguments in rebutting relevance.  First, Defendant argues that Plaintiff's emphasis on comparators is mistaken.  (*See* ECF No. 43, PageID.714).  In support of this contention, Defendant tries to undermine Plaintiff's reliance on *Jamoua v. Mich. Farm Bureau* because (1) that case was on a summary judgment posture, and (2) Jamoua prevailed in his employment discrimination case without a comparator.  (*See id.* at PageID.714-16).  *See also Jamoua*, 2021 WL 5177472, at *15.  But what

13

Defendant fails to articulate is that *Jamoua* may be the exception to the general rule.[8]  Jamoua prevailed because there was other non-comparator evidence that gave rise to an inference of discriminatory intent.  *See id.*  Defendant does not contend that there is similar non-comparator evidence present in this case, nor does it produce additional caselaw when a plaintiff made a prima facie showing of disparate treatment without a comparator.  At any rate, *Tepper* includes as its fourth prong factual evidence that a plaintiff "was replaced by a person outside of the protected class *or that he was treated differently than similarly situated employees*."  *Tepper*, 505 F.3d at 515 (emphasis added).  As Plaintiff here makes no mention of any replacement, she is entitled to tailored discovery related to her comparators to try  to satisfy the *Tepper* test.

Defendant also argues that Plaintiff has not explained precisely why the breadth of her search terms is needed to accomplish this goal.  (*See* ECF No. 43, PageID.716).  Yet, as discussed above, the reason Plaintiff selected the terms is facially apparent—they're targeted to discover ESI from the custodians' deliberations on Plaintiff's exemption request and the requests of her comparators.

---

[8] *Jamoua* involved a claim of employment discrimination under Michigan state law and did not use the *Tepper* test.  *See* 2021 WL 5177472, at *14.  Compared to the fourth *Tepper* prong which explicitly references the treatment of some other employee (whether it be a complainant's replacement or a similarly situated employee), the fourth prong from the test in *Jamoua* requires a showing that the plaintiff "suffered the adverse employment action under circumstances giving rise to an inference of unlawful discrimination."  *See id.* (internal quotation and citation omitted).  The *Jamoua* Court noted the logic behind the use of comparators but suggested that other evidence can suffice in the absence of such a comparator.  *See id.* at *15.

If Defendant's overbreadth concerns relate to the sheer number of terms, then such an objection to relevance is insufficient. *See Webasto*, 326 F.R.D. at 468 ("Unless it is obvious from the wording of the request itself that it is overbroad, vague, ambiguous or unduly burdensome, an objection simply stating so is not sufficiently specific.") (internal quotation and citation omitted).

For Defendant to prevail, more specificity is needed. For instance, in *Webasto*, the plaintiff successfully argued overbreadth related to an ESI request that produced "multiple gigabytes . . . comprising tens of millions of pages of documents." *See id.* After reviewing just the first 100 records, it was apparent that the results had no bearing on the issues in the lawsuit; accordingly, the search terms were properly deemed overbroad. *See id.* Given that the search results here are considerably less voluminous (8,500 hits here compared to millions in *Webasto*), Defendant could have reviewed some subset of documents to confirm the efficacy of the search terms. Had it done so, Defendant could have informed Plaintiff of any deficiency in the hopes of producing more narrowly tailored ESI. Lacking "sufficient reasons" for denying the ESI's production, Defendant fails to satisfy its burden in opposing Plaintiff's motion.

In short, comparator evidence is key to Plaintiff's disparate treatment theory under *Tepper*. The value of the search terms in doing so is facially apparent, and Defendant has not satisfied its burden in opposing the relevance of the proposed

search terms.  As a result, the search terms are relevant under Federal Rule of Civil

Procedure 26(b)(1).

## 2. Proportionality

When parties dispute proportionality, the Federal Rules of Civil Procedure

instruct them to consider several factors including "the importance of the issues at

stake in the action, the amount in controversy, the parties' relative access to

relevant information, the parties' resources, the importance of the discovery in

resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  This Court has written that

both parties have some responsibility to address these proportionality factors.  *See*

*State Farm Mut. Auto Ins. Co v. Precious Physical Therapy, Inc.*, No. 19-10835,

2020 WL 7056039, at *2 (E.D. Mich. Dec. 2, 2020).  *See also* 6 Moore's Fed. Prac.

– Civil § 26.42 (2024).  The party opposing discovery, however, must assert

specific information related to how the discovery request is unduly burdensome;

rote boilerplate objections "are legally meaningless and amount to a waiver of an

objection."  *Sister Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209-10 (E.D. Mich.

2018).

Plaintiff argues that nearly all the factors favor her side. Based on the Court's review, Plaintiff's estimation is correct.[9] On the importance of the issues in this case, "'an action to vindicate a citizen's civil rights is considered of high importance.'" *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 634 (E.D. Mich. 2021) (quoting *Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 860 (E.D. Mich. 2017)). The requested discovery is also integral to Plaintiff's disparate treatment argument. (*See* ECF No. 42, PageID.621). This would appear to be true considering that progress in this case has halted over this ESI issue; in fact, Defendant indicates that no depositions have occurred because of the disputed ESI. (*See* ECF No. 43, PageID.724 (indicating that depositions initially scheduled for June 2023 are still pending)). Another factor in Plaintiff's favor is that Defendant has exclusive access to the requested ESI. (*See* ECF No. 42, PageID.620 (citing *Waskul*, 569 F. Supp. 3d at 364)). Lastly, in terms of resources, Defendant is one Michigan's largest healthcare providers whereas Plaintiff is only a single individual;[10] and as Defendant itself suggests, it does not suffer from a lack of "budgetary or staffing" resources. (*See* ECF No. 43, PageID.720).

---

[9] Neither party addresses the amount in controversy. This is understandable as this figure is uncertain. The only number reflected in the complaint is a request for damages that exceeds $100,000, and that number does not represent the other damages and compensation Plaintiff seeks. (*See* ECF No. 1, PageID.32).

[10] According to one resource, Henry Ford Health "posted revenue of $6.5 billion for nine months end[ing] Sept. 30 . . . ." Andrew Cass, *Henry Ford Health's Operating Income Up $242M through Q3*, BECKER'S HOSPITAL CFO REPORT (Nov. 14, 2024), https://perma.cc/Y4ZA-

Defendant addresses none of these factors.  Rather it focuses entirely on the last of the proportionality factors.  Specifically, Defendant alludes to the $12,000 estimate from its ESI vendor as well as the extra expense associated with review of the documents.  (*See id.* at PageID.717).  But as this Court has stated, "A party objecting to a request for production of documents as burdensome must submit affidavits or other evidence to substantiate its objections."  *Waskul*, 569 F. Supp. 3d at 634 (internal quotation and citation omitted).  Nowhere in its briefing has Defendant submitted such evidence.  Thus, Defendant's proportionality objection on this ground is deficient from the start.

Moreover, had Defendant provided corroborative evidence, the cases it cites in support of its position only confirm the opposite.  Defendant first cites *Durbin v. C&L Tiling Inc.* where the court denied a motion to compel given 1, 275 hours and $78,000 needed to review ESI for fifteen comparators.  *See* No. 3:18-CV-334-RGJ, 2019 WL 4615409, at *11 (W.D. Ky. Sept. 23, 2019).  What Defendant fails to point out is that (1) the party opposing discovery provided an affidavit in support of its estimate, and (2) the estimate itself exceeded the damages the movant sought.  *See id.* at *11, n.7.  Neither such facts are present here.  The two other cases cited are just as inapt.  *See Smith v. Hartford Life & Accident Ins. Co.*, No. 5:19-061-

---

G5F6 (last visited Dec. 19, 2024).  As far as Plaintiff's resources, the only discernable indicator is a reference to her compensation for "$63.94/hour" with a new employer.  (*See* ECF No. 43-4, PageID.744).

DCR, 2019 WL 6829953, at *5 (W.D. Ky. Dec. 13, 2019) (denying motion to compel based on an affidavit supporting a $55,000 estimate—a figure more than four-times Defendant's estimate); *Hoffman v. Crites*, No. 21-10703, 2022 WL 1274956, at *1-2 (E.D. Mich. Apr. 28, 2022) (*granting* motion to compel of 2,693 documents based, in part, on a partial assessment confirming the need for extensive document review—an assessment Defendant did not perform).

In short, Defendant makes no arguments on the other proportionality factors; and Defendant does not carry its burden on the last factor for the reasons stated above.  All other factors favor Plaintiff.  Accordingly, Plaintiff's RFP No. 8 is proportional under Federal Rule of Civil Procedure 26(b)(1).

Because the Court finds the requested ESI to be both relevant and proportional, the Court **GRANTS** Plaintiff's motion to compel.  Defendant must produce the requested ESI within **21 DAYS** from the date of this Order.  With the issuance of this Order on Plaintiff's motion to compel (ECF No. 42), the stay on discovery deadlines applicable to this matter, (ECF No. 45, PageID.774), is hereby **LIFTED**.

With the stay lifted, the Court will grant an extension of discovery and dispositive motion deadlines.  Discovery will close on **April 7, 2025**.  The Court will also conduct a status conference on **February 20, 2025** to check on the status of discovery.  All dispositive motions will be due by **May 6, 2025**.

19

3.    <u>Sanctions</u>

Having granted Plaintiff's motion, the Court "must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  The Court will not order such sanctions if "the opposing party's nondisclosure, response or objection was substantially justified" or "if other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).  Plaintiff argues sanctions are warranted because Defendant's objections are meritless.  (*See* ECF No. 42, PageID.621).  Defendant responds that its arguments are substantially justified considering its good-faith negotiations related to the search terms which it considered overbroad and disproportionate.  (*See* ECF No. 43, PageID.723).  And Defendant asserts that it did not behave as the sanctioned party in *Waskul* did, that Plaintiff has not been prejudiced in making its case despite the delayed ESI, and that both parties have been unable to conduct depositions because of this discovery issue.  (*See id.* at PageID.724).

Based on the above analysis, *see supra* Subsections III.B.1-2, the Court finds that Defendant's argument lack merit thereby rejecting its "substantially justified" position under Federal Rule of Civil Procedure 37(a)(5)(A)(ii).  As to the purported differences between this case and *Waskul*, the two cases are more analogous than Defendant cares to admit.  In *Waskul*, the court sanctioned the defendants because

of their "stubborn and meritless" position borne out of defense counsel's general
incompetence on ESI discovery.  *See Waskul*, 569 F. Supp. 3d at 634-39.  As Henry
Ford contracted with an ESI vendor, Defendant already has a leg up on the defense
counsel in *Waskul*.

Even so, similarities exist.  While taking defense counsel to task, the *Waskul*
Court noted that "the responding party . . . should have taken a commanding role in
developing the strategy to produce its responsive emails.  Generally [r]esponding
parties are best situated to evaluate the procedures, methodologies, and
technologies appropriate for preserving and producing their [ESI]."  *Id.* at 636
(internal quotations and citations omitted).  Going even further, the *Waskul* Court
criticized defense counsel for "*le[aving] the task to plaintiff's counsel*" to produce
search terms "*[r]ather than propos[ing] methodologies . . . to produce documents.*"
*Id.* (emphasis added).  Just as in *Waskul*, Defendant left Plaintiff to craft the search
parameters.  None of the briefing or included exhibits indicate that Defendant
proposed its own search parameters; rather "the task was left to plaintiff's
counsel."

This is all the more notable considering that throughout its briefing
Defendant criticizes Plaintiff for ignoring the "collective responsibility" parties
share when it comes to discovery.  (*See* ECF No. 43, PageID.705 (quoting *Helena
Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 998 F.3d 260, 273 (6th Cir.

2021)) (internal quotation and citation omitted)).  Citing *Helena Agri-Enterprises*,

Defendant emphasizes that Federal Rule of Civil Procedure 26(b)(1) aims to "rein

in the exorbitant costs, protracted time and contention that have strained the civil

justice system."  (*See id.*).  Yet, from the Court's perspective, Defendant failed to

adhere to its own instruction because it left Plaintiff to construct the search

parameters when *Waskul* instructs each party to participate in doing so.  *See* 569 F.

Supp. 3d at 637 ("Defense counsel cannot disown responsibility for designing

proportional searches and search testing.") (citing *William A. Gross Const. Assocs.,*

*Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 134-36 (S.D.NY. 2009)).

     In addition, while neither side has been able to conduct depositions because

of the delayed ESI, they will not occur until 2025—after being originally

scheduled as far back as June 2023.  (*See* ECF No. 43, PageID.724).  And it is

important to note that the parties are not before the Court on a clean slate.  This is

the second time this Court has addressed RFP No. 8.  Previously, the request was

too broad.  As ordered, Plaintiff spent six months taking extensive efforts to limit

the parameters of its request; even in its briefing on this motion, Plaintiff offers to

further refine its search if certain conditions are met.  (*See* ECF No. 44,

PageID.765).  The Court thus agrees that Plaintiff has followed its prior Order to

the letter.

The parties returned because of Defendant's meritless opposition to Plaintiff's discovery request.  The Court will give Defendant credit for obtaining the assistance of an ESI vendor but nothing more.  For these reasons, the Court **ORDERS** Defendant to reimburse Plaintiff for half the attorneys' fees and costs expended on this motion within 14 days of this Order.  If the parties cannot agree on reasonable costs and fees, Defendant must file a bill of costs with supporting argument, and Plaintiff must file a response within 14 days of service.  No reply will be allowed.

**IT IS SO ORDERED.**

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.

Date: January 6, 2025                    <u>s/Curtis Ivy, Jr.</u>
                                         Curtis Ivy, Jr.
                                         United States Magistrate Judge

## APPENDIX A

The following is the full text of RFP No. 8, *see* ECF No. 42, PageID.603.

Note that the term "pray! OR" appears twice.

All documents including emails or other electronic messaging (including text messages and encrypted messaging apps) relating to discussions of Henry Ford's plans to respond to employee requests for accommodations (of any kind) from the Policy, from May 1, 2021 to November 1, 2021, from the following custodians (the Religious Accommodation Committee): KHARRi19@hfhs.org, DEAGEN1@hfhs.org, NFARQUH1@hfhs.org, tiaquin1@hfhs.org; EBACIGA1@hfhs.org; SRaglan4@hfhs.org; ckibiri1@hfhs.org, ksmith67@hfhs.org, containing the terms(s):

1.  Meg! OR Abbaw! OR Nagham! AND relig! OR onlin! OR webs! OR connect!

2.  Meg! OR Nagham! OR Abbawi! OR Yvonne! OR Gerlach! OR Fadwa! OR Gillander! AND

| | | |
|---|---|---|
| vaccin! OR | templ! OR | relig! OR |
| vax! OR | faith! OR | flu! OR |
| shot! OR | reject! OR | prior! OR |
| covid! OR | den! OR | convict! OR |
| burden! OR | grant! OR | harm! OR |
| hardship! OR | accept! OR | pray! OR |
| cost! OR | accommodate! OR | prior! OR |
| connect! OR | object! OR | holy! OR |
| sincer! OR | pray! OR | spirit! OR |
| christ! OR | | saf! |